FRANKLIN,
January,
1830.

## TOWN OF GEORGIA *vs.* TOWN OF ST. ALBANS.

Whenever an order for the removal of a pauper is made by two justices of the peace, agreeably to the 3d section of the act relating to legal settlement and providing for the poor, an attested copy of such order must be left with some one of the overseers of the poor of the town to which the pauper is ordered to remove, within thirty days after the making the order, notwithstanding the constable who executes the warrant of removal leaves with the overseer of the poor, with whom he lodges the pauper, an attested copy of the warrant which contains a copy of the order.

It is not a valid objection to a warrant of removal that it bears date at the time the order of removal was made, though by such order a future day is appointed before which the pauper may voluntarily remove to the place of his legal settlement.

This was an appeal from the order of two justices of the peace made on the complaint of the overseer of the poor of the town of *Georgia* for the removal of *Barnabus Raymond, Polly Raymond*, wife of said *Barnabus*, and *Mary Raymond, Charity Raymond, Nahum Raymond, Huldah Raymond, Barnabus Raymond, jun. John Raymond* and *Christiana Raymond*, children of said *Bar-*

FRANKLIN,
January,
1830.

Georgia
vs.
St. Albans.

nabus *Raymond* and wife, from *Georgia* to *St. Albans*. The order was made on the 2d day of Aug. 1827, and the paupers were thereby ordered to remove with their effects on or before the 9th day of the same month. It seems the justices made out a warrant of removal on the same second day of August, and dated it on the same day, directed to the constable of *Georgia* to be executed. By this warrant the constable was commanded, " that unless the said paupers do comply with the said order of removal, to cause them to be removed and transported with their effects on the most convenient route from the town of *Georgia* to the town of *St. Albans*, it being the place of their legal settlement." The constable executed the warrant on the 14th day of August by removing the paupers to *St. Albans*, and lodging them with the overseer of the poor of that town. He left a copy of the warrant with the overseer of the poor, which contained a recital of the order of removal. But no copy of the order was ever left with any overseer of the poor of *St. Albans*, except in the manner just mentioned.

On the trial at the county court, the counsel for *St. Albans* moved that the whole proceedings be quashed, because no attested copy of the order of removal had been left with the overseer of the poor of said town, which they said was required by the 5th section of the act passed November 4, 1817; and secondly, because it did not appear that said paupers had prior to the 9th day of August, 1827, refused or neglected to comply with said order, and that the said justices were not authorized to issue any warrant founded on the order of removal until after that time.

The county court were of opinion that the proceedings ought to be quashed for the cause first above mentioned, and the case was removed to this Court to be heard on the questions of law arising from the foregoing facts.

After argument, the opinion of the Court was delivered by

PADDOCK, J.—It appears that, on the second day of August, 1827, two justices of the peace within the county of *Franklin*, upon the application of an overseer of the poor of the town of *Georgia*, after having examined *Barnabus Raymond*, then a pauper in said town, as to the place of his legal settlement, and finding that it was not in the town of *Georgia*, but was in the town of *St. Albans*, made their order of removal, requiring *Raymond*, on or before the ninth day of the same month, to remove with his family and effects to the last mentioned place; that said justices made a warrant of removal, which bore date the same 2d of August,

Franklin,
January,
1830.
―――
Georgia
vs.
St. Albans.

1827 ; and on the 10th day of the same same month *Josiah Newton*, one of the overseers of the poor of the town of *St. Albans*, appeared before one of the justices forming the court of inquiry, and claimed and was allowed an appeal from said order of removal to the county court then next to be holden within and for the county of *Franklin*. It further appears, that the warrant of removal, which the justices had made out, had been delivered to a constable, and on the 14th of the same month, it was by him carried into effect, by removing *Raymond*, his family and effects, to *St. Albans*, and lodging them with *Newton*. The concluding part of his return is as follows : " and on the same 14th day of " August, 1827, I left at the last and usual place of abode of said " *Josiah Newton* a true and attested copy of this warrant and or- " der of removal with this my return endorsed on said copy, to- " together with a copy of the complaint and warrant, and proceed- " ings of the court of inquiry and examination, duly attested by " said court.          Attest, *D. R. Bogue*, Constable."

A portion of the last part of the return, it is conceded by both parties, is not literally true ; as the copy left, was a transcript of the warrant made and signed by the justices, which warrant was prefaced with a recital of the record of the proceedings of the court of inquiry, and their order for removal.

The appellants duly entered their appeal in the county court, and filed their motion, praying the court to quash the process and proceedings for the following reasons : 1st. Because neither of the overseers of the poor of the town of *St. Albans* had been served with, nor had there been delivered to them, an " *attested copy of the order of removal*," as required by the 5th section of the statute of 1817. 2d. Because said justices made their warrant of removal on the 2d day of August, which was seven days before the expiration of the time given by their order in which *Raymond* might go without coercion. The county court considered the removal of *Raymond* illegal, and quashed the proceedings. The appellees, feeling themselves aggrieved by the decision, excepted thereto ; and the case is before this Court for revision.

The warrant, bearing date the day on which the order of removal was made, is not objectionable : the statute says, " that if such stranger shall neglect or refuse to comply with such order, the said justices shall issue their warrant," &c. To fill up a blank warrant, signed by the justices, cannot be the *issuing* here intended ; but the delivering it over to a proper officer to be executed. As the statute does not expressly or impliedly prohibit the filling out

FRANKLIN,
January,
1830.
———
Georgia
vs.
St. Albans.

of the warrant before the expiration of the time given by the order in which the pauper may withdraw himself, it is more convenient to do it at the time the order is made, than it would be for the justices to meet again for that purpose.

The object of the legislature in passing the 5th section of the act of 1817, directing that whenever an order of removal shall be made, an attested copy of such order shall be left with some one of the overseers of the poor of the town to which such pauper is to remove, within thirty days after the making of such order, was to apprize the town, in which it was found the pauper belonged, of the proceedings; that they might look into the case and satisfy themselves whether they were chargeable or not, before the expense of a removal was had; and also to secure the right of appeal to the aggrieved party, which was not sufficiently so by the act of 1797. It has been contended by counsel, that inasmuch as the copy of the warrant, certified and left by the constable, embraced the whole record of the justices' doings, and, of course, the order, that it superceded the necessity of a compliance with the 5th section of the act of 1817; and the more so, as the appeal was taken before the pauper was removed. It is to be recollected that the constable in leaving with the overseer a copy of his warrant, &c. acted under the law of 1797, which was in force and in no wise altered by the act of 1817. By the 5th section of the latter there is a positive and unqualified enactment, " *that whenever any order of removal shall be made, &c. an attested copy of such order shall be left with some one of the overseers of the poor of the town, to which such pauper shall be ordered to remove, within* 30 *days, &c.*" The two statutes direct two separate things to be done, where an order of removal is made; the one, that the town calling the court of inquiry shall furnish the town in which it is determined the pauper has his settlement, with a certified copy of the *order* of removal in a given time; the other, that the constable, executing the *warrant*, shall leave with the overseer a certified copy of the same. These two acts are in no wise inconsistent with each other. There is no more difficulty in carrying both, than there is either, into effect, saving the additional trouble; and that the court do not feel authorized to relieve from. It is the province of the legislature to enact laws, and the duty of the judiciary to carry them into effect; and where the law is imperative in making it the duty of a person or body corporate to perform a definite act, before they can enjoy a subsequent privilege, they cannot be relieved from the performance, and yet take the fruits

FRANKLIN, *January,* 1830.

Georgia *vs.* St. Albans.

of it ; for the latter may be said to grow out of the former, even though no one be benefited by the act.   If there had been a substantial cause for enacting the 5th section of the law of 1817, which no longer exists, there would be some propriety in saying, that as the reason for its enactment no longer existed, its operation ought to cease.   But if there was ever a cause for its passage, that cause exists now, and the statute must be complied with, and the judgment of the county court must be affirmed.

Judgement affirmed.

*H. Allen*, for appellees.

*Wetmore* and *Smith*, for appellants.